(87 South. 254)

No. 23108.

## BROOKS & CLARK, Limited, v. BROUSSARD et al.

(Jan. 31, 1921.)

(Syllabus by Editorial Staff.)

**1. Mortgages ⚖497(1)—Dismissal of foreclosure proceedings before sale did not destroy rights of purchaser of mortgage.**

Where foreclosure proceedings were dismissed before sale of the property by mortgagee by formal motion in which it was alleged that one B. had paid the mortgagee therefor a certain sum, and that the mortgagee had "transferred said mortgage notes to the said" B. and "had also subrogated the said" B. to all the rights and actions that the mortgagee had in and under the mortgage, B.'s rights in the mortgage were not lost by the judgment or order dismissing the executory process.

**2. Homestead ⚖176 — First mortgagee, although having homestead waiver, to be paid from surplus before encroaching on the $2,000 exemption.**

Where a homesteader has, with his wife's consent, formally waived his homestead exemption in favor of a mortgagee, and the homestead property is sold for an amount exceeding $2,000 by a sum which is not sufficient to pay the mortgagee and the claims of a subsequent judgment creditor, not having such a waiver, the homesteader may require that the surplus be first applied to the payment of the mortgagee, and the other creditor may not require the mortgagee to be paid from the $2,000 constituting the homestead before encroaching upon the surplus, in view of Const. arts. 244-246.

**3. Exemptions ⚖40, 42—Household furniture and wearing apparel exempt in addition to homestead.**

The value of a homesteader's wearing apparel and furniture and that of his family, amounting to $150, *held* exempt under Code Proc. art. 644, in addition to the $2,000 homestead allowed by Const. arts. 244, 246.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Action by Brooks & Clark, Limited, against Mayo Broussard, and another. From the judgment defendants appeal, and plaintiff answers, praying that the judgment be amended. Judgment annulled and set aside, and decree rendered for defendants.

Philip S. Pugh and Gremillion & Smith, all of Crowley, for appellants.

Smith & Carmouche, of Crowley, for appellee.

DAWKINS, J. Lessin Broussard was the owner of a tract of land and appurtenances consisting of 80 acres, farming implements, live stock, household goods, etc., attached thereto. On March 1, 1912, he executed in favor of A. C. Lormand a mortgage upon said property to secure two certain notes of same date being for $200 and $225, and due January 1, 1913, and January 1, 1914, respectively, each bearing 8 per cent. per annum interest from date, and providing for the payment of 10 per cent. attorney's fees, etc., which said notes were secured by mortgage upon said property and contained a homestead waiver duly executed by Broussard and his wife.

Subsequently thereto Lormand instituted foreclosure proceedings on said notes and mortgage, but before the property was sold the suit was dismissed by the plaintiff by formal motion in which it was alleged that one Morris Breaux had paid Lormand therefor $546.25, and that the latter had "transferred said mortgage notes to the said Morris Breaux, and had also subrogated the said Morris Breaux to all rights and actions that the owner of said mortgage notes, A. C. Lormand, the original mortgagee, had in and under the special mortgage, act No. 36197 of the Mortgage Records of Acadia Parish, La. * * *"

In July, 1913, plaintiff, Brooks & Clark, Ltd., obtained and recorded in the mortgage records of said parish, a judgment against the said Broussard for $356.81.

On November 10, 1917, Lessin Broussard was adjudged a bankrupt in the federal court, and at the time the amount due plaintiff, with interest and costs, was $525. Broussard claimed as his homestead and had set apart to him as such by the federal court the said land, household goods and furniture to the value of $150, a wagon valued at $20, farm machinery valued at $30, two horses, one mule, and sixteen head of hogs valued at $188 (it being admitted in this case that the old mule is worthless).

Thereafter plaintiff issued execution on its judgment in the state court and seized and sold the real estate, which brought $2,-368. Breaux intervened and claimed a preference on his mortgage notes and homestead waiver; and Lessin Broussard likewise intervened and asserted his homestead exemption on the proceeds to the extent of $2,000.

There was judgment below as follows:

(1) In favor of Breaux for the amount of the two notes, interest, attorney's fees, and costs to be paid out of the $2,000 in the hands of the sheriff claimed by Broussard as his homestead.

(2) In favor of Lessin Broussard recognizing his homestead claim to the extent of $2,000, less the amount to be paid the said Breaux and less the value of the personal property (except household furniture valued at $150 with which he was not charged) amounting to $230 and taxes of $20.34.

The balance was ordered paid over to plaintiff.

Both Breaux and Broussard have appealed, and plaintiff has answered, praying that the judgment be amended by charging the homesteader with the $150 of furniture and wearing apparel, to be deducted from the funds claimed as exempt.

## Opinion.

[1] The facts are not disputed, and, while plaintiff has attacked the claim of Breaux on the ground that his mortgage rights had been lost by the judgment or order dismissing the execution process sued out by Lormand, the record clearly discloses that the mortgage and notes were transferred to Breaux with full subrogation of all rights and actions thereunder. No authority has been cited, and we know of none, to sustain the proposition that a proceeding via executiva dismissed under such circumstances, in which a third person has purchased the notes and acquired the mortgage, apparently for the accommodation of the debtor, can be said to be res judicata, or to destroy the rights of the holder upon the property.

The sole remaining questions are:

(1) Where a homesteader has, with the consent of his wife, formally waived his rights as such to a particular creditor, and the property is sold and the fund is in excess of $2,000, but the excess is not sufficient to pay the creditor with a waiver and the claims of another judgment creditor, has the homesteader the right to require that the surplus be first applied to the payment of the preferred creditor, to the prejudice of the junior mortgagee, or must the amount paid to the creditor holding the waiver be deducted from the $2,000 constituting the homestead?

(2) Is the value of the homesteader's wearing apparel and furniture and that of his family included in the homestead so as to require its deduction from the $2,000, or is it exempt under Code of Practice, art. 644, in addition to the homestead allowed by the Constitution?

[2] It is well to note that both the creditor with the homestead waiver and the homesteader insisted and are still insisting that the former has the right to apply and should apply the surplus of the proceeds of the property above $2,000 to the payment of his debt before encroaching upon the sum allowed by the Constitution as a homestead, and which had been waived as to this creditor

alone. Notwithstanding this creditor, under the judgment of the lower court, receives, by preference, all of his claim, both he and the homesteader have appealed; so that there is no dispute or controversy between them, and both are resisting the contention of the plaintiff.

Succinctly stated, the question involved is: Has a judicial mortgagee without a waiver of the homestead the right to require that a prior mortgage creditor, with waiver, shall be paid out of the homestead fund of $2,000 before encroaching upon the surplus; in other words, to require a prior discussion by the superior lienholder of the fund which is exempt as to the plaintiff?

The claims of both creditors rested upon the entire property, consisting of 80 acres, and which could not have been sold as to the claim of the plaintiff but for the fact that it brought more than $2,000.

Article 244 of the Constitution provides:

"There shall be exempt from seizure and sale by any process whatever, except as herein provided, and without registration, the homestead, bona fide, * * * to the value of two thousand dollars.

"Provided, that in case the homestead exceeds two thousand dollars in value, the beneficiary shall be entitled to that amount in case a sale of the homestead under any legal process realizes more than that sum."

Article 245 mentions the particular debts as against which the homestead is not exempt, and article 246 reads:

"The right to sell any property that is exempt as a homestead shall be preserved; but no sale shall destroy or impair any rights of creditors thereon. Any person entitled to a homestead may waive the same, by signing with his wife, if she be not separated a mensa et thoro, and having recorded in the Mortgage Record of his parish, a written waiver of the same, in whole or in part. Such waiver may be either general or special, and shall have effect from the time of recording."

The article last quoted gives the homesteader the right, when joined therein by his wife, to waive in writing said exemption generally for the benefit of all his creditors and as to all debts, or to waive it as to a particular creditor or debt alone. If it be as to a particular creditor, any claim which he may hold may be asserted against the exempt property; or, if it be as to a particular debt, that debt alone can be enforced against the homestead. As to all other creditors and debts, the situation stands just as if no waiver had taken place. Hence, when the homestead is sold at the instance of one holding a waiver, the proceeds must be applied to the extent of the whole, if necessary, to satisfy the debt, and regardless of whether or not it brings $2,000; but, if the sale be sought by one without a waiver, it cannot take place unless the property bring more than the exemption, and the debtor has the right, in the latter event, to claim the proceeds to the extent of $2,000. If it bring more than that amount at the instance of one having both a waiver and a first mortgage, the whole, if necessary, must be applied to the payment of his debt, to the exclusion of junior mortgagees without a waiver. Or, if the senior mortgage holder, without a waiver, provoke the sale, a junior mortgagee, with a waiver, may claim by preference the exempt fund or so much thereof as may be necessary to satisfy his debt. Glen v. Bresnan, Gueydan Rice Mills, Intervener, 123 La. 1014, 49 South. 690. Therefore the waiver is for the exclusive benefit of the creditor in whose favor it is given. To hold that one without such relinquishment can require the creditor with it, and enjoying superior right also because of his prior mortgage to discuss the homestead or its proceeds before looking to the surplus, would be to give such inferior lienor the benefit of the waiver, in spite of the authorized limitation of the Constitution and the expressed will of the homesteader that it should be limited in its effects to the debt or creditor in whose favor it was given.

To illustrate, if the waiver did not exist, the senior lienor would consume the whole of the surplus, if necessary in satisfying his claim, and the junior creditor would take nothing; whereas, if the homestead in consequence of a waiver had to be discussed, and there were sufficient surplus to pay the first in rank, it would be the inferior mortgagee who would really benefit thereby.

It may be argued that to permit the creditor with a waiver to exhaust the surplus property or its proceeds before going against the homestead, regardless of the amount of the debt, would enable the debtor to claim his exemption in property worth thousands of dollars, just so he made the preference obligation large enough to consume the surplus. The answer is that this would be true only if that indebtedness as a whole primed the claims of other creditors. Glen v. Bresnan, supra. The situation would be no worse than if the debtor, with a large number of creditors, had sold for cash other valuable property, paid a particular creditor, and then claimed his homestead in what remained of such a nature and value as to be clearly exempt (subject in either instance, of course, to the remedies afforded by the bankruptcy law).

"It has been considered that a creditor of the homesteader has no right, as against the latter, to insist that an incumbrance covering the homestead and other property shall be enforced principally against the homestead, but, on the other hand, the homesteader may insist that the other property be first sold, and that if, when the entire property is sold under such an incumbrance, there is a surplus, after paying the amount due, the homesteader may receive out of such surplus the amount of the homestead exemption free from the claims of other creditors." A. & E. Ency. of Law (2d. Ed.) vol. 15, pl. 692.

See, also, 21 Cyc. p. 616, verbo Homesteads; Century Dig. vol. 25, verbo Homesteads, § 343; Dec. Dig. vol. 10, Homesteads, §§ 175, 176.

It follows that the plaintiff in this case has no right to compel the payment of Breaux's debt entirely out of the $2,000 homestead fund. The amount of the latter's debt should be first paid out of the whole fund or net proceeds of the property. Broussard should be credited with the $2,000 exemption allowed by the Constitution, and charged with the value of the personal property which falls within the exemption of the Constitution, and the surplus, if any, should go to the plaintiff.

[3] As to the item of $150.00 representing the value of household furniture and wearing apparel, with which the lower court refused to charge the homesteader, we think it is exempt under the provisions of article 644 of the Code of Practice, in addition to the homestead allowed by the Constitution, just as the wages of a laborer or the tools and instruments with which the debtor makes his living are exempt from seizure regardless of value or amount. See article 644, Garland's Code, and authorities cited thereunder.

For the reasons assigned, the judgment appealed from is annulled and set aside, and it is now ordered and decreed that the claim of Morris Breaux in the sum of $425, with 8 per cent. per annum interest from January 1, 1918, and 10 per cent. additional on principal and interest as attorney's fees, with costs accrued therein, be first paid out of the net proceeds of the property sold in this case, that the homestead of Lessin Broussard to the extent of $2,000, less the sum of $254.34, value of movable property retained by him, be recognized and sustained, and that the balance, if any, after the payment of all costs, be paid over to plaintiff.

O'NIELL, J., concurs in the decree.